# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

CHRISTOPHER PREJEAN,                          CIVIL ACTION NO. 17-1170
on behalf of Himself and Other
Persons Similarly Situated

VERSUS                                        JUDGE TERRY A. DOUGHTY

SATELLITE COUNTRY, INC.,                      MAG. JUDGE WHITEHURST
LYNN JENKINS & PAMELA MCCUE

## RULING

Pending before the Court is a Motion for Summary Judgment to Dismiss Claims of Opt-Ins Against Pamela McCue, Lynn Jenkins & Satellite Country ("Motion for Summary Judgment") [Doc. No. 123] filed by Defendants. They contend that neither Pamela McCue ("McCue"), a former employee and officer of Satellite Country, Inc. ("Satellite Country"); Lynn Jenkins ("Jenkins"), the owner and CEO of Satellite Country; nor Satellite Country itself was the "employer" of the Opt-In Plaintiffs as that term is defined by the Fair Labor Standards Act ("FLSA"). Plaintiffs filed a Memorandum in Opposition to the motion [Doc. No. 130]. Defendants filed a reply. [Doc. No. 141].

For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.      RELEVANT FACTS

On September 14, 2017, Christopher Prejean, on behalf of himself and all others similarly situated, filed a Collective Action Complaint against Defendants Satellite, McCue, and Jenkins, alleging violations of provisions of the Fair Labor Standards Act (hereinafter "FLSA") for failure

to pay overtime wages. On April 17, 2018, this Court conditionally certified this matter as a Collective Action, and approximately fifty-five (55) Plaintiffs have joined the litigation.

Satellite is a Texas corporation which has been in business for approximately twenty years and provides sales and fulfillment work for third party entities. While its headquarters and administrative offices are in Austin, Texas, it provides fulfillment work in limited markets, primarily the Lafayette, Baton Rouge, and Alexandria, Louisiana areas (known as "HUB installation locations"). Most of its work over the years has been provided on behalf of Dish Network Corporation ("DISH"), a home televisions services provider based in Colorado. DISH provides the direct-broadcast satellite provider DISH and the IPTV service Sling TV.

Jenkins and McCue have been named individually as Defendants in this matter. They have a personal relationship and live together in Utah. With regard to Satellite Country, Jenkins is the founder and CEO and remains active with the company. McCue began working for Satellite Country in 2000, focusing on the administrative side of the business. She was formerly the President of the company, but relinquished all active roles in 2015. McCue continues to assist from time to time on issues that may arise, including gathering information responsive to discovery requests in this lawsuit.

The third Defendant, Satellite Country itself, employs forty-nine persons as employees who receive W-2s from the company. These employees handle sales, advertising, fulfillment, administration, and management. During the collective period, however, Satellite Country contracted with satellite technicians to perform fulfillment work. Currently, Satellite Country has only twelve subcontractor technicians to perform the fulfillment services. It also has some technicians now who are employed to perform fulfillment work.

The relationship with each of the Company's technicians starts once the technician is qualified to do DISH work orders and when the technician accepts routes through Satellite Country. The technicians do not have an exclusive relationship with the Company, and the Company does not prohibit the technician from working for DISH directly. Although Satellite Country contends that the technicians are not prohibited from working for other subcontracting companies who have a similar relationship with DISH, some of the technicians testified that the nature of the work effectively prevented them from doing so. Additionally, Satellite Country's manager, Derrick Wright, testified that technicians could not perform DISH work concurrently for other companies.[1]

There is some question whether technicians must have formed an LLC prior to accepting work from Satellite Country. Although many of the technicians formed LLCs prior to contracting with the Company, and Satellite Country helped others do so, at least one technician testified that not all technicians were required to form LLCs.

Most technicians who accept routes through Satellite Country work for less than six (6) months. Each of the technicians is responsible to (a) maintain his or her vehicle, (b) purchase the fuel for his or her vehicle; (c) purchase and maintain his or her tools, (d) have materials on hand necessary to complete accepted work orders, (e) purchase and maintain equipment necessary to complete accepted work orders, and (f) ensure the completion of work orders is done accurately and completely in line with DISH requirements. The technicians perform their work at the residence of a DISH customer.

---

[1]Plaintiffs contend that the contract itself required technicians to be available "24/7." [Doc. No. 130, Exh. 3]. However, that statement is misleading. The contract states that "Satellite Country is a 24/7 organization," not that each technician must be available 24 hours a day, seven days a week.

Technicians were required by Satellite Country to report to the warehouse by 6:00 a.m. to collect materials and attend a meeting before receiving schedules. Additionally, technicians are required to perform jobs within the time slots given. They are also required to receive work orders until 5:00 p.m. and to provide advance written notice if they are taking time off.

For the last several years, including the collective period, Satellite Country's HUB managers have helped to facilitate the routing of DISH work orders to the technicians once DISH has indicated its needs on a given day. The HUB managers also assist the technicians with obtaining the appropriate equipment needed for the work orders.

Satellite Country requires that technicians wear a uniform; identify themselves as representatives of Satellite Country; and drive a certain model, color, and year vehicle.

Once the base rate of pay for a given work order is established by DISH within a given market, Satellite Country sets up a tier system that allocates a portion of that base rate to technicians who do DISH work orders through the company. Technicians are paid for the successful completion of work orders through a piece meal compensation system. Compensation for completion of work orders to the technicians is determined by the efficiency of completed DISH work orders, the procurement of tools, materials and equipment, management of expenses, and the accuracy and quality of their work. Satellite Country determines whether to pay technicians higher compensation based on completion of DISH work orders with a high level of accuracy and quality.

On July 19, 2019, Defendants filed the instant Motion for Summary Judgment, contending that none of the three Defendants is an employer as defined by the FLSA and case law interpreting it.

On August 9, 2019, Plaintiffs filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 130], disputing the evidence relied upon by Defendants and arguing that there are genuine issues of material fact for trial that the three Defendants are employers under the FLSA.

On August 21, 2019, Defendants filed a Reply Memorandum [Doc. No. 141].

This matter is now ripe, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

"[W]hether a worker is an employee for FLSA purposes is a question of law. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 377 (5th Cir. 2019) (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987)).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The

moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." *Id.* at 323.

FLSA determinations of employment status are "'very fact dependent.'" *Parrish*, 917 F.3d at 380 (quoting *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993)). A summary judgment "on FLSA employee status can be granted when 'there are facts pointing in both directions,' *Carrell*, 998 F.2d at 334, so long as they do not generate a genuine dispute of material fact." *Parrish*, 917 F.3d at 380.

### B. FLSA

Plaintiffs seek damages for unpaid compensation under the FLSA. They have named McCue, Jenkins, and Satellite Country as Defendants because they were allegedly "employers" under the FLSA. Defendants move the Court for summary judgment, contending that Plaintiffs cannot establish that any of the three Defendants is an employer under the FLSA.

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

> The definition of employee under the FLSA is particularly broad. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 . . . (1992) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"). To determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself. *Herman v. Express Sixty–Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998). To aid us in this inquiry, we consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the

alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* No single factor is determinative. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043–44 (5th Cir. 1987). Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind. *Id.*

*Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

Neither the intent of the alleged employee and the employer, nor the label they use to describe their working relationship controls whether the worker is an employee or an independent contractor. *See Watson v. Graves*, 909 F.2d 1549,1554 (5th Cir. 1990) ("We must . . . look to the substantive realities of the relationship, not to mere forms or labels ascribed to the laborer by those who would avoid coverage."). "[F]acile labels and subjective factors are only relevant to the extent that they mirror 'economic reality.'" *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019) (quoting *Brock*, 814 F.2d at 1044) (other citations and internal quotation marks omitted). "Stated differently, 'it is not what [plaintiffs] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive.'" *Id.* (quoting Brock, 814 F.2d at 1047) (emphasis in original) (citations omitted).

### 1. McCue

First, Defendants move the Court to grant summary judgment dismissing the claims against McCue as an individual Defendant. They argue that none of the factors applied by the Fifth Circuit support a finding otherwise because (1) she had no economic or professional relationship with any of the technicians, (2) she did not personally invest in the fulfillment business, (3) she did not affect the technicians' opportunity for profit or loss, (4) the technicians had a unique set of skills, and (5) the technicians had a temporal relationship with Satellite

Country.   They point out that the technicians who were deposed could not answer why McCue is a Defendant.

Plaintiffs respond that McCue is President of Satellite Country and exercises "operational control" over the company and that she has been instrumental in the operation of the company since its inception.

The term "employer" includes individuals with managerial responsibilities and "substantial control over the terms and conditions of the [employee's] work . . . ." *Falk v. Brennan*, 414 U.S. 190, 194 (1973).   "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."   *Donovan v. Grim Hotel Co*., 747 F.2d 966, 972 (5th Cir. 1984) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)).   The court must determine whether an individual officer, who lacks "'a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'"   *Solis v. Universal Project Management, Inc.,* No. H–08–1517, 2009 WL 4043362 *3 (S.D. Tex. Nov. 19, 2009) (quoting *Reich v. Circle C. Invs., Inc*., 998 F.2d 324, 329 (5th Cir. 1993)).

In this case the facts show that McCue has had a long-term personal and professional relationship with the owner and CEO of Satellite Country, Jenkins.   She does not and apparently has not ever had an ownership interest in the company or share in the profits, but she was an employee of the company almost from its inception, and she was designated as the President. Regardless of title, McCue avers that her role was primarily "overseeing the administrative functions of the company."   [Doc. No. 123-3, McCue Declaration, ¶ 5].   McCue has lived in

Utah since 2014 and has only been to the Austin office one time since 2014, spending about ½ of the day for two days there. It is also undisputed that she has not held the role of President and has not been an active employee of Satellite Country since 2015. At best, she served in that role for a few months during the beginning of the two-year collective action period.[2] Finally, she avers that she has had no relationship with the satellite technicians and exercised no control over them.

Plaintiffs point to the depositions of McCue and Jenkins to support their opposition. McCue testified that she had been an officer of the company since 2001 and that, during the time prior to her retirement, she and Jenkins made administrative decisions together, including a decision to treat technicians as independent contractors versus employees. [Doc. No. 130, Exh. 15, McCue Depo., pp. 9-10]. Jenkins confirmed McCue's testimony that they made joint decisions prior to McCue's retirement. [Doc. No. 130, Exh. 16, Jenkins Depo., pp. 5-7].

However, Plaintiffs' evidence falls short of even the expansive definition of employer under the FLSA. While McCue has undoubtedly been instrumental in her roles with the company throughout the years, Plaintiffs have not presented any evidence that she exercised control over the satellite technicians, that she had any financial investment in the company at all, that she affected any technician's opportunity for profit or loss, or in determining the revenues received by them. At best, it appears that for a few months of the collective period she had the power to act with regard to the technicians, but there is no evidence that she exercised such power. Regardless of any title that McCue retains, it is clear that she is presently retired from the company. [Doc. No. 130, Exh. 1, Rule 30(b)(6) Depo., p. 27 (Jenkins describes McCue as

---

[2]Obviously, if Satellite Country were found at trial to have acted willfully, she would been President during the additional one-year period of liability.

"President, retired")].   Accordingly, Defendants' motion is GRANTED, and Plaintiffs claims against McCue are DISMISSED WITH PREJUDICE.

**2. Jenkins**

Defendants also move for summary judgment dismissing the claims against Jenkins individually.   Defendants argue that everyone involved understand their role and   the nature of their contract with Satellite Country.   Each independent contractor signed an agreement as to pay and their understanding of their classification as an independent contractor.   He had limited interactions with technicians, but mainly sought to attract work orders from DISH in various markets and to use Satellite Country's HUB Managers to help make sure the work orders were completed in an acceptable fashion to the end customer.

Plaintiffs respond that "a reasonable jury could come to the conclusion that Mr. Jenkins" is an employer because he made the decision to treat technicians as independent contractors, that he created the tiered pay structure for technicians, and he remains "heavily involved in the management of Satellite Country's affairs."   [Doc. No. 130, pp. 19-20].

In contrast to McCue, Jenkins is the sole owner and director of the company and has been since the inception.   [Doc. No. 130, Exh. 1, Rule 30(b)(6) Depo., p. 30].   Not only does he have a possessory interest in Satellite Country, but he remains actively involved and asserts control by setting the compensation schedule.   Jenkins clearly has managerial responsibilities and exercises control of the terms and conditions of those who work for Satellite Country.   Given the broad definition of an employer, if Satellite Country is an employer, then Jenkins would also be an employer as he acted directly or indirectly in the interest of Satellite Country in relation to the

satellite technicians.[3]   Therefore, to this extent, Defendants' Motion for Summary Judgment as to Jenkins is DENIED.

### 3. Satellite Country

Finally, Defendants argue that Satellite Country is not an employer of the collective opt-in Plaintiffs who are properly characterized as independent contractors.   Defendants contend that Satellite Country's relationship with the technicians was primarily to provide them with work   orders if they were qualified to do them and had indicated a desire to do them on a given day.   Satellite Country contends that any supervision that it had over technicians was to ensure that there were enough independent contractors available to do DISH work orders on a given day, that the independent contractor was qualified by DISH to enter the premises of DISH's customer, and in an effort to deal with the up and down nature of DISH's needs in a given market.

Specifically, Defendants contend that the following facts support their Motion for Summary Judgment:

(1)     Management of the Company's technicians has been handled by the HUB managers for the last several years, including during the collective period;

(2)     The technician's day is managed by the technician himself, and the work orders issued to the Company by DISH;

(3)     Each technician has his own company and is free to run it as he chooses;

(4)     Some technicians use helpers, hold other jobs, work part-time, or do contracting

---

[3]Obviously, if the Court found that Satellite Country is not an employer under the FLSA, then Jenkins could not be an employer based on his actions in the interest of Satellite Country.   However, given the Court's conclusions as to Satellite Country, denial of Defendants' Motion for Summary Judgment is appropriate.

work on the side;

(5) Each technician is fully aware that he is a 1099 contractor and that he is paid for the successful completion of work orders through a piece meal compensation system;

(6) This piece meal payment plan is documented in an agreement that each technician signs;

(7) The piece meal payment method is the common industry standard for third-party fulfillment organizations and is not unique to Satellite Country;

(8) The HUB managers help facilitate the successful routing of DISH work orders to the technicians once DISH has indicated its needs on a given day;

(9) The HUB managers have assisted the technicians with obtaining the appropriate equipment needed for the work orders the technicians choose to accept;

(10) The technicians do not have an exclusive relationship with Satellite Country, and Satellite Country does not prohibit technicians from working for DISH directly;

(11) The technicians are not prohibited by Satellite Country from working for other subcontracting companies who have a similar relationship with DISH as Satellite Country;

(12) The time period for most of the technicians who accept routes through Satellite Country is less than six (6) months;

(13)  Each of the technicians is responsible to (a) maintain his/her vehicle, (b) purchase the fuel for his/her vehicle; (c) purchase and maintain his/her tools, (d) have materials on hand necessary to complete accepted work orders, (e) purchase

and maintain equipment necessary to complete accepted work orders, and

(f) ensure the completion of work orders is done accurately and completely in line with DISH requirements;

(14)    The technicians perform their work unsupervised at a remote location, at the residence of a DISH customer;

(15)    Compensation for completion of work orders to the 1099 technicians is determined by the efficiency of completed DISH work orders, the procurement of tools, materials and equipment, management of expenses, and the accuracy and quality of their work.

Plaintiffs respond Satellite Country exercised significant control over the worker's schedule, timing of breaks, training, compensation, supervision, and the manner and method of work performed. They point to the deposition of Derrick Wright, who has been a manager with Satellite Country for over ten years and has fifteen years of experience in the industry. He testified that he had asked that the satellite technicians be classified as employees, rather than contractors. He further testified that it was the responsibility of Satellite Country HUB managers to receive jobs from DISH and then route or assign the jobs to the technicians and make sure that the technicians arrived at the jobs on time. Additionally, HUB managers continued to route jobs to technicians during the day, and they would use ETA direct to monitor the technicians to ensure that they completed all of their jobs on time and closed out for the day. Further, Plaintiffs point to additional facts that they contend show that Satellite Country was an employer:

(1)    Satellite Country inspects the work done by the technicians;

(2)     Satellite Country provides extensive training to the technicians;

(3)     Satellite Country dictates the jobs that the technicians are to perform;

(4)     The technicians cannot change the order of the jobs assigned to them without permission from Satellite Country;

(5)     The technicians have to provide Satellite Country with two weeks written notice when requesting time off;

(6)     Satellite Country dictates the pay that the technicians received based on their internal metrics;

(7)     Satellite Country controls the performance of the technicians by assigning the technicians to different "payment tiers";

(8)     Satellite Country mandated that the technicians wear uniforms with Satellite Country logos;

(9)     Satellite Country can terminate the technicians for poor performance;

(10)    Satellite Country did not permit the technicians to advertise the satellite technician services;

(11)    Satellite Country did not permit the technicians to perform satellite technician services for other contractors.

As required by the Fifth Circuit, the Court has considered the five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. Hopkins, 545 F.3d at

15

343.

### a. Degree of Control

The parties dispute the degree of control that Satellite Country held over the satellite technicians. According to Satellite Country, its HUB managers essentially facilitated the performance of the jobs by the satellite technicians, but the satellite technicians themselves decided for whom and when they worked, how they performed their jobs, determined their own work day, and whether they accepted jobs from other companies. Satellite Country further contends the satellite technicians had their own companies to run however they choose, that they can use helpers, hold other jobs, or work part-time, or do contracting work for other companies on the side. Although there is a tiered system of compensation, Satellite Country points out that DISH provides a base rate of pay, and then pay to the satellite technicians is set by the market place in a particular region.

However, Plaintiffs dispute that Satellite Country's control was so limited. Despite Satellite Country's contentions, Plaintiffs point out that satellite technicians were required to attend a morning meeting and that the HUB managers provided the work assignments, checked on the performance and the time of completion of jobs, and did not permit satellite technicians to change the order of jobs without authorization. Plaintiffs further point to testimony of Derrick Wright and satellite technicians that the satellite technicians could not perform DISH work simultaneously for other companies.

Additionally, there was not a set rate of pay for completion of each particular job, but, as Satellite Country concedes, "experienced . . . technicians who complete DISH work orders with a high level of accuracy and quality receive higher compensation than their inexperienced and less

skilled counterparts."   [Doc. No. 123-2, ¶ 15].

Much of the evidence relevant to this factor is undisputed, and the parties merely argue on the relevance of that evidence.   As employment status is an issue of law, the Court could consider the evidence as weighing in favor of or against employment status.   However, the parties have presented a genuine dispute of material facts specific to the control exercised by the HUB managers on behalf of Satellite Country, the degree of independence exercised by satellite technicians, the ability of satellite technicians to obtain other employment or contracts, and the compensation determination for the satellite technicians.   The Court keeps in mind the admonitions of the Fifth Circuit that "[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that [the individual] stands as a separate economic entity[,]" and that "lack of supervision [of the individual] over minor regular tasks cannot be bootstrapped into an appearance of real independence."   *Parrish*, 917 F.3d at 381.   Applying that guidance, the Court finds that Plaintiffs have raised a genuine issue of material fact for trial in this regard, and the Court cannot determine as a matter of law whether Satellite Country controlled the meaningful aspects of the satellite technician's job.   This factor is thus undeterminable at the current stage.

While control is certainly a key factor to determining employment status, the Court is also cognizant of the Fifth Circuit's instruction that no one factor is determinative, so the Court has also considered the remaining factors.

### b.  Relative Investments

The Court next considers the relative investments of Satellite Country versus those of the satellite technicians.   In making this comparison, the Court employs a side-by-side approach,

17

but considering this factor as "linked to the overall inquiry of 'whether the alleged employees . . . are 'economically dependent' on the business to which they supply their labor and services."

*Parrish*, 917 F.3d at 383 (quoting *Brock*, 814 F.2d at 1043).

In this case, the job is that of fulfilling DISH satellite technicians service needs. Satellite technicians provide their own vehicle, insurance, fuel, purchase and maintain tools (including ladders, drills, cables, and fittings) and have materials and equipment necessary to complete accepted work orders. Satellite Country, however, pays for SatTracks subscription services of up to $5,000.00 per month, plus a charge per work order from DISH, as well as advertising costs of approximately $2,000 for DISH installation services. Moreover, testimony from Wright indicates that Satellite Country pays for hotel rooms for out-of-town technicians, and it is undisputed that satellite technicians also obtain some tools and/or materials from Satellite Country when they attend the morning meeting. While it is a close question in this particular case, it appears that Satellite Country has a more significant investment than the satellite technicians. This factor then favors employee status, but is not a substantial factor.

### c. Degree to Which Profit or Loss is Determined by Alleged Employer

The Court then turns to the next factor—the degree to which profit or loss is determined by the alleged employer. In this case, Satellite Country argues that the number of work orders a satellite technician received for a day, week, or month was determined by a number of factors, including DISH's needs in a region on a given day, the number of technicians who sought those opportunities, the efficiency of a particular technician in completing orders, and the level of the technician's performance. Thus, Satellite Country contends that it was not the determinative factor in determining the technicians' profits or loss, but rather the needs of DISH and the

abilities of the technicians themselves controls this outcome.

Plaintiffs respond that Satellite Country's argument ignores the fact that it exerted control over the technicians' schedule that "doing other paid work was practically impossible," and, therefore, the technicians' "control over profit and losses is limited."   [Doc. No. 130, p. 12]. They also point out that the amount paid was not subject to a bidding or proposal process. Under the tiered payment system developed by Jenkins, Plaintiffs argue that it is Satellite Country, not the technicians, which controls the profit and loss.   DISH pays the same rate to Satellite Country regardless of the technician who will perform the job, but it is Satellite Country which decides how much a particular technician will be paid under its tiered system.

Recently, in *Parrish*, the Fifth Circuit pointed out that, "[i]n evaluating this factor, it is important to determine how the workers' 'profits [depend] on their ability to control their own costs.'"   917 F.3d at 384 (quoting *Carrell v. Sunland Const., Inc.*,   998 F.2d 330, 334 (5th Cir. 1993)).   In that case, the employer cited to the workers' tax returns showing business profits and expenses.   The court also considered other sources of income from those returns.   The court further noted that inability to subcontract is an "exercise of control."   *Id.*

In considering this factor, the Court finds insufficient evidence in this record and genuine issues of material fact which prevent it from determining as a matter of law whether this factor favors employee or contractor status.   First, as previously noted, it is disputed whether satellite technicians could contract with other entities while performing work for Satellite Country, and it is further disputed if obtaining such other jobs was practicable based on the demands of Satellite Country.   The Court notes that the Fifth Circuit gives some credence to Satellite Country's argument that the skill and abilities of the technician can be taken into

account without creating an employment relationship.   As the *Parrish* court explained, " it is not unreasonable for a company to want to hire a specific person. This is especially the situation when the [contractor] is being hired for his advanced skill and specialized expertise."   *Id.* at 385. While on balance this factor appears to favor Satellite Country, the Court finds that it cannot reach a conclusion without resolution of the disputed facts and additional evidence.

### d.  Skill and Initiative

The next factor is the skill and initiative required in performing the job.   To evaluate this factor, the Court must consider whether the satellite technicians have "'some unique skill set, or some ability to exercise significant initiative within the business,'" and "[g]reater skill and more demonstrated initiative counsel in favor of [contractor] status."   *Id.* (quoting *Hopkins*, 545 F.3d at 345).   "But, '[r]outine work which requires industry and efficiency is not indicative of independence and nonemployee status." *Id.* at 385 (quoting *Usery*, 527 F.2d at 1314 (footnote omitted)).   Skills "that are not 'specialized,' but rather are 'common' to all employees in that position counsel against [contractor] status."   *Id.* at 385-86 (quoting *Hopkins*, 545 F.3d at 345 (citation omitted).

Satellite Country contends that its satellite technicians do have a special set of skills. They point to other case law comparing cable installation and service to carpentry and electrical work.   *See* [Doc. No. 123-1, pp. 11-12 (citing *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp.2d 667 (D. Md. 2000)].   Likewise in *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. App'x 782 (11th Cir. 2006), and *Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 Fed. App'x 104 (4th Cir. 2001), the Eleventh and Fourth Circuits found that cable and home satellite installers have special skills.   They argue further under Fifth Circuit precedent that a worker's

20

ability on the job to make independent decisions supports the finding of independent contractor status.  *See* [Doc. No. 123-1, p. 12 (citing *Hopkins, supra*)].

Plaintiffs respond that they do not have a unique skill set and are unable to take initiative, but merely perform routine work at the direction of Satellite Country.   They point out that newly hired technicians without prior experience would be provided training and materials.

The Court agrees with Satellite Country that this factor favors independent contractor status.   Even if the satellite technicians cannot work simultaneously for Satellite Country and another contractor, they can take their skills to another company afterward and perform work using their own knowledge, skills, tools, and materials.   The fact that Satellite Country may be willing to train and/or provide materials for someone new to the industry does not negate the fact that the job itself requires skills.   Indeed, one of Plaintiffs' issues is the tiered system under which satellite technicians with greater skill are paid more.   The Court agrees with the other courts which have addressed this issue and found that satellite technicians have "special skills to properly install home satellite . . . systems."   *Chao*, 16 Fed. App'x at 107.

### e.  Permanency of Relationship

Finally, the Court considers the relative permanence of the relationship.   Satellite Country presented evidence that most satellite technicians accept routes from the company for less than six (6) months.   While Plaintiffs "dispute" this evidence, they do so only by pointing to evidence that satellite technicians are not hired for any particular period of time.   That fact does not appear disputed (nor would it be when Satellite Country contends the satellite technicians are contractors).   This factor weighs in favor of finding that the satellite technicians were not employees of Satellite Country.

### f. All Factors

After reviewing the factors, the Court finds that it cannot determine whether Satellite Country was the employer (and thus whether the satellite technicians were employees) at this stage. Much of the evidence supports Satellite Country's position that the satellite technicians were independent contractors, but the Court is mindful of the applicable standard of review when considering a motion for summary judgment, even when an issue of law is to be determined.

Based on a review of the facts and the evidence supporting them, the Court finds that there are genuine issues of material fact for trial as to whether Satellite Country was the employer of the technicians under the FLSA. Among other issues, Plaintiffs have presented sufficient evidence to call into question Satellite Country's contention that its technicians could work for other companies also performing fulfillment work and whether the technicians were in fact in control of their work schedule once an assignment issued. While it is generally true that any employee who performs work at a customer's home has some control over that work, one of the issues the Court must resolve is the level of supervision and control Satellite Country exercised over technicians and whether that supervision and control were sufficient to render the technicians FLSA "employees," rather than independent contractors, regardless of their characterization by Satellite Country or what the agreement said they were.

Under these circumstances, Defendants' Motion for Summary Judgment is DENIED as to Satellite Country.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. No.

123] is GRANTED IN PART and DENIED IN PART. To the extent that Defendants move for summary judgment on the claims against Pamela McCue, the motion is GRANTED, and the claims of Plaintiffs against her are DISMISSED WITH PREJUDICE. The motion is otherwise DENIED.

MONROE, LOUISIANA, this 15th day of October, 2019.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE