UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| CHRISTOPHER PREJEAN, on behalf of Himself and Other Persons Similarly Situated | CIVIL ACTION NO. 17-1170 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| SATELLITE, INC., LYNN JENKINS & PAMELA MCCUE | MAG. JUDGE WHITEHURST |

## RULING

On September 14, 2017, Christopher Prejean ("Prejean"), on behalf of himself and all others similarly situated, filed a Collective Action Complaint against Defendants Satellite, Inc. ("Satellite"), Lynn Jenkins ("Jenkins"), and Pamela McCue ("McCue'). Prejean alleged that Defendants were liable for violations of provisions of the Fair Labor Standards Act (hereinafter "FLSA") for failure to pay overtime wages to satellite technicians who were treated as subcontractors by Satellite. Pending before the Court is a Motion for Partial Summary Judgment on the Issue of Operational Control [Doc. No. 147]. Prejean contends that Jenkins and McCue should be found to have exercised operational control as a matter of law and are thus jointly and severally liable with Satellite if it is found to be an employer under the FLSA.

For the following reasons, the Motion for Partial Summary Judgment is DENIED as to Jenkins and DENIED AS MOOT as to McCue.

I.  **RELEVANT FACTS**

Satellite is a Texas corporation which has been in business for approximately twenty years and provides sales and fulfillment work for third party entities. While its headquarters and

administrative offices are in Austin, Texas, it provides fulfillment work in limited markets, primarily the Lafayette, Baton Rouge, and Alexandria, Louisiana areas (known as "HUB installation locations"). Most of its work over the years has been provided on behalf of Dish Network Corporation ("DISH"), a home televisions services provider based in Colorado. DISH provides the direct-broadcast satellite provider DISH and the IPTV service Sling TV.

Jenkins is the founder and CEO of Satellite and remains active with the company.

Satellite employs forty-nine persons as employees who receive W-2s from the company. These employees handle sales, advertising, fulfillment, administration, and management. During the collective period, however, Satellite contracted with satellite technicians to perform fulfillment work. Currently, Satellite has only twelve subcontractor technicians to perform the fulfillment services. It also has some technicians now who are employed to perform fulfillment work.

The relationship with each of the Company's technicians starts once the technician is qualified to do DISH work orders and when the technician accepts routes through Satellite. The technicians do not have an exclusive relationship with the Company, and the Company does not prohibit the technician from working for DISH directly. Although Satellite contends that the technicians are not prohibited from working for other subcontracting companies who have a similar relationship with DISH, some of the technicians testified that the nature of the work effectively prevented them from doing so. Additionally, Satellite's manager, Derrick Wright, testified that technicians could not perform DISH work concurrently for other companies.[1]

There is some question whether technicians must have formed an LLC prior to accepting

---

[1] Plaintiffs contend that the contract itself required technicians to be available "24/7." [Doc. No. 130, Exh. 3]. However, that statement is misleading. The contract states that "Satellite is a 24/7 organization," not that each technician must be available 24 hours a day, seven days a week.

work from Satellite. Although many of the technicians formed LLCs prior to contracting with the Company, and Satellite helped others do so, at least one technician testified that not all technicians were required to form LLCs.

Most technicians who accept routes through Satellite work for less than six (6) months. Each of the technicians is responsible to (a) maintain his or her vehicle, (b) purchase the fuel for his or her vehicle; (c) purchase and maintain his or her tools, (d) have materials on hand necessary to complete accepted work orders, (e) purchase and maintain equipment necessary to complete accepted work orders, and (f) ensure the completion of work orders is done accurately and completely in line with DISH requirements. The technicians perform their work at the residence of a DISH customer.

Technicians were required by Satellite to report to the warehouse by 6:00 a.m. to collect materials and attend a meeting before receiving schedules. Additionally, technicians are required to perform jobs within the time slots given. They are also required to receive work orders until 5:00 p.m. and to provide advance written notice if they are taking time off.

For the last several years, including the collective period, Satellite's HUB managers have helped to facilitate the routing of DISH work orders to the technicians once DISH has indicated its needs on a given day. The HUB managers also assist the technicians with obtaining the appropriate equipment needed for the work orders.

Satellite requires that technicians wear a uniform; identify themselves as representatives of Satellite; and drive a certain model, color, and year vehicle.

Once the base rate of pay for a given work order is established by DISH within a given market, Satellite sets up a tier system that allocates a portion of that base rate to technicians who

do DISH work orders through the company. The tier system was created by Jenkins, and technicians are paid for the successful completion of work orders through a piece meal compensation system. Compensation for completion of work orders to the technicians is determined by the efficiency of completed DISH work orders, the procurement of tools, materials and equipment, management of expenses, and the accuracy and quality of their work. Satellite determines whether to pay technicians higher compensation based on completion of DISH work orders with a high level of accuracy and quality.

On July 19, 2019, Defendants filed a Motion for Summary Judgment seeking the dismissal of all claims against them. [Doc. No. 123]. While that motion was pending on October 8, 2019, Prejean filed the instant Motion for Partial Summary Judgment on the Issue of Operational Control [Doc. No. 147]. Prejean contends that he is entitled to judgment as a matter of law that Jenkins and McCue exercised operational control over Satellite and are thus jointly and severally liable for damages to the collective plaintiffs. Defendants oppose summary judgment. [Doc. No. 151].

Following the filing of the instant motion, however, on October 15, 2019, the Court issued a Ruling [Doc. No. 149] and Judgment [Doc. No. 150] dismissing the claims against McCue, but leaving those claims against Jenkins and Satellite pending.

This instant motion is now ripe, and the Court is prepared to rule.

**II.     LAW AND ANALYSIS**

**A.  Standard of Review**

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would

affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine

5

issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Claim of Operational Control Against McCue

On October 15, 2019, the Court issued a Ruling [Doc. No. 149] and Judgment [Doc. No. 150] dismissing the claims against McCue. The Court hereby ADOPTS BY REFERENCE the statement of facts and analysis of law contained therein. Given the dismissal of the claims against McCue, Prejean's Motion for Partial Summary Judgment is DENIED AS MOOT with regard to McCue.

### C. Analysis of Jenkins' Operational Control under the FLSA

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

6

"The Fifth Circuit uses the 'economic reality' test to evaluate whether there is an employer/employee relationship." *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). "The test originates in the Supreme Court's holding that 'economic reality' should govern the determination of employer status under the FLSA." *Id.* at 355 (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)).

"The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) (citation and internal quotation marks omitted). "The overwhelming weight of authority is that a corporate officer *with operational control* of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Donavan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984) )(citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (emphasis added)). On the other hand, "while 'employer status may be appropriate where operational control coincides with one's position as a shareholder, officer, or owner,' the case law does not suggest that '*merely* being an officer or shareholder subjects an individual to FLSA liability.'" *Morgan v. Rig Power, Inc.*, No. 7:15-CV-073-DAE, 2017 WL 11017230, at *4 (W.D. Tex. Sept. 1, 2017) (quoting *Gray*, 673 F.3d at 355–56 (emphasis added)).[2] Instead, the Fifth Circuit "recognizes that 'individuals are ordinarily

---

[2] The Court recognizes that *Gray* and its progeny are not without criticism. In *Seong Song v. JFE Franchising, Inc.*, 394 F.Supp.3d 748, 752 (S.D. Tex. 2019), the United States District Court for the Southern District of Texas recognized irresolvable inconsistencies between *Gray* and the Fifth Circuit's prior decision in *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669–70 (5th Cir. 1968). In *Wirtz*, the Fifth Circuit listed the following questions that should be used to assess whether a person or corporation is an employer or joint employer:

(1) Whether or not the employment takes place on the premises of the company?; (2) How much

shielded from personal liability when they do business in a corporate form, and . . . it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA.'" *Id.* (quoting *Gray*, 673 F.3d at 356) (other quotations omitted)).

Prejean cites to Jenkins' deposition testimony that he agreed that counsel was "correct" in stating that he had "operational control of the corporation to the extent that" he controlled "significant functions of the business." [Doc. No. 147-1, p. 4 (quoting Exh. B, pp. 5-7)]. Jenkins further testified that it was his decision to classify satellite technicians as subcontractors rather than employees. As the Court previously recognized, there was also evidence that Jenkins created the tiered pay structure for technicians and remains "heavily involved in the management of Satellite's affairs." [Doc. No. 130, pp. 19-20].

However, Jenkins points to evidence that satellite contractors are hired by Satellite hub

---

        control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

*Id.* at 669–70. *Gray* instructs:

        To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."

Gray, 673 F.3d at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). The district court in *Seong Song* criticizes not the test from *Gray* as being incompatible with the binding precedent of *Lone Star*, but its requirement that at least one of factors be present to bestow employer status. 394 F.Supp.3d at 756. This, the district court contends, "unavoidably contradicts *Lone Star Steel's* mandate that joint employer determinations be based upon the totality of each situation, as well as its identification of particularly relevant considerations." *Id.*

        In this case, however, for the reasons set forth below, the Court finds genuine issues of material fact for trial, regardless of the test or application thereof.

managers based on the qualifications set by DISH, not by him individually. In fact, Jenkins contends that there is no evidence he ever hired or fired a satellite technician, that he ever supervised employee schedules or conditions of employment, or that he maintained employment records on behalf of the satellite technicians.

While both parties have presented evidence relevant to the determination, the Court finds that there are genuine issues of material fact for trial whether Jenkins had operational control sufficient to render him jointly and severally liable with Satellite if it is determined to be an employer under the FLSA.[3] Therefore, to this extent, Prejean's Motion for Partial Summary Judgment is DENIED.

### III. CONCLUSION

For the reasons set forth above, Prejean's Motion for Partial Summary Judgment [Doc. No. 147] is DENIED as to Jenkins and DENIED AS MOOT as to McCue.

MONROE, LOUISIANA, this 25th day of November, 2019.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[3] To the extent that the Court's prior Ruling on Defendants' Motion for Summary Judgment is inconsistent, the Court clarifies that, in the prior Ruling, it was reaching a determination only as to whether there were genuine issues of material fact for trial that Jenkins could be held liable as an "employer." Likewise, in this case, the Court finds only that Prejean is not entitled to judgment as a matter of law without more. At this stage, the Court simply cannot determine as a matter of law whether Jenkins is or is not an employer exercising operational control over the satellite technicians.