UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **CHRISTOPHER PREJEAN,** on behalf of Himself and Other Persons Similarly Situated | **CIVIL ACTION NO. 17-1170** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **SATELLITE COUNTRY, INC., ET AL.** | **MAG. JUDGE WHITEHURST** |

### MEMORANDUM RULING

Pending before the Court is Defendants' Motion to Exclude Report and Testimony of John W. Theriot [Doc. No. 187]. Defendants Satellite Country, Inc. ("Satellite Country") and Lynn Jenkins ("Jenkins") move to exclude the report and testimony of John W. Theriot ("Theriot"), a certified public accountant ("CPA") expert retained by Plaintiff Christopher Prejean ("Prejean") to provide damages calculations. Prejean opposes the motion.

For the following reasons the motion is GRANTED IN PART AND DENIED IN PART.

### I. FACTS AND PROCEDURAL HISTORY

On September 14, 2017, Prejean, on behalf of himself and all others similarly situated, filed a Collective Action Complaint against Satellite Country, Pamela McCue ("McCue"), and Jenkins, asserting violations of the Fair Labor Standards Act ("FLSA") for alleged failure to pay overtime compensation. On April 17, 2018, the Court conditionally certified this matter as a Collective Action, and approximately forty-eight (48) Plaintiffs have joined Prejean in this litigation.[1]  After motion practice, Pamela McCue was dismissed as a Defendant. Prejean's claims against Satellite

---

[1] Some Plaintiffs have been dismissed after motion practice because their claims were determined to be untimely.

Country and Jenkins remain pending. Trial is set for December 7, 2020.

Prejean and other class members worked as satellite technicians who performed work orders on behalf of DISH Network, LLC ("DISH") for Satellite Country.

At trial, if the satellite technicians are determined to have been employees of Satellite Country, the jury will be charged with determining the amount of damages due to them. To assess damages, the jury will need to determine the hours worked by all Plaintiffs. Prejean has retained Theriot, a CPA, to calculate the damages allegedly owed to all Plaintiffs.

In April 2019, Theriot issued a Preliminary Report. In the introduction, Theriot states as follows:

> Christopher Prejean and all other similarly situated ("Plaintiffs") were hired to work for Satellite Country as Technicians. Plaintiffs were, at all times, "non-exempt" employees and eligible to receive overtime pay pursuant to Section 2017 of Fair Labor Standards Act ("FLSA"). Plaintiffs were employed by Satellite Country and were not paid for all hours worked and also were not paid appropriate overtime wages when they worked more than forty (40) hours in a workweek as require by the FLSA. Additionally, Satellite Country makes improper deductions from Plaintiffs' wages causing Plaintiffs to be paid less than statutory minimum and overtime wage required by FLSA. As a result, Satellite Country violates the minimum and overtime wage provisions of the FLSA.

[Doc. No. 187-2]. He bases his summary on the Collective Action Complaint. *Id.* n.1.

In order to perform his wage calculations, Theriot relied on "Fact Sheet #23," which was issued by the Wage and Hour Division of the United States Department of Labor. He further "made the following computations and/or assumptions" to comply with "the FLSA requirements":

1. Counsel has asked us to assume that each Plaintiff worked a 70-hour workweek, but were only paid for a 40-hour workweek. The overtime rate is computed by dividing the total of the "Weekly Commission on Sales and Installs Expense" amounts by the 40-hour workweek outlined by FLSA then multiplying that result by 1.5 in order to compute the applicable overtime rate. Additionally, counsel has asked us to assume

2

          that all time worked discussed above is subject to the rules of the FLSA.

2.       Counsel has asked us to assume a workweek consisted of the 168-hour period being paid on each weekly check.

3.       The actual rate of pay has been computed by dividing the total of the "Weekly Commission on Sales and Installs Expense" amounts by the 40-hour workweek outlined by FLSA in order to determine the actual rate of pay for each 168-hour period being paid on each weekly check. In some instances, this computation yielded a rate a pay below minimum wage. In an effort to be conservative we have not computed the loss related to the rate of pay being below minimum wage as these instances appear to be sporadic in nature.

4.       As stated above, in order to determine the applicable rate of pay we have divided the "Weekly Commission on sales and installs Expense" applicable day rate paid by the 40-hour workweek outlined by FLSA in order to determine the average hourly rate for each plaintiff.

5.       In the event that a Plaintiff, in a single workweek, worked with differing straight-time rates of pay, the regular rate for that week is the weighted average of such rates.

6.       Counsel has informed us that there were not any non-cash payments to employees in the form of good or facilities.

[Doc. No. 187-2]. To calculate wages for the applicable time period, Theriot used weekly check stubs, the "Tech Install Sheet," and the 1099's. *Id.* He then created a table for the Plaintiffs for whom he had information.

      On June 4, 2019, Theriot issued an Addendum [Doc. No. 187-3] to his report, which contained calculations for three of the Plaintiffs and updated calculations for two additional Plaintiffs.

## II. LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596.

In determining whether to allow expert opinion testimony, the Court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, FED. R. EVID. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in

4

issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

### B. Analysis

Defendants move to exclude Theriot's reports on three bases: (1) he is not qualified to give the "opinions" contained in the summary at the beginning of his Preliminary Report; (2) his methodology in calculating unpaid wages and liquidated damages is flawed; and (3) his presentation to the jury as an expert in the calculation of FLSA damages would confuse the jury and is highly prejudicial to Defendants.

Prejean responds that Theriot is qualified to offer testimony that

> (1) is well grounded in the facts of this matter, (2) based on his respective education, training, expertise and experience, which will (3) unquestionably be helpful to the fact-finder in this matter, and (4) which is beyond the comprehension of the average lay person.

[Doc. No. 198, p. 2]. He explains that Theriot will testify regarding the average hourly overtime rate of pay during the relevant period of time that the class plaintiffs were employed by Satellite Country and that his opinion is based on his education and expertise as a CPA and properly based on wage and hour information derived from weekly check stubs, tech install sheets and the 1099s provided for each technician, along with utilizing a 70-hour workweek for each technician based upon the testimony of the technicians.

5

Prejean explains further that Theriot's expertise as a CPA was not employed to perform the mathematical calculations necessary to determine the alleged overtime amounts, but because he was called upon to review and synthesize hundreds of pages of complicated payroll documents from Defendants which contained large quantities of data.

He refutes Defendants' contention that Theriot improperly relied on the testimony of the class Plaintiffs that they worked 70 hours a week. Theriot did not offer an opinion on the accuracy of the hours works. Prejean contends that if there is a factual determination that some other amount of time worked by technicians is different, then his calculation can be applied to that number. If Theriot were to be barred from explaining his calculations, Prejean argues that the jury would be left with having to compute the overtime amounts for each Plaintiff based upon hundreds of data entries.

Defendants reply that Prejean failed to address their argument that the opinions proffered in the summary of Theriot's preliminary report should be excluded. They further refute Prejean's contention that Theriot is needed to calculate the overtime rate of pay, arguing that his calculation is common and "based upon readily accessible data and basic math that requires no expertise." [Doc. No. 215, p. 2]. They use data from one technician to illustrate their point. They further seeks to distinguish persuasive case law relied upon by Prejean, pointing the Court to the other persuasive case law they contend is more apt.

Defendants do not challenge Theriot's qualifications as a CPA or argue that he is not qualified as an expert in accounting. Rather, they challenge that his qualifications to render the "opinions" in the summary of the Preliminary Report, contend that his calculations are not

6

helpful to the jury on a matter requiring expertise, and that such unnecessary opinions are prejudicial.

First, as an initial matter, to the extent that Defendants move to exclude Theriot's "report," the motion will be granted. Absent stipulation, Prejean will need to present Theriot's testimony at trial, and his report will not be received in evidence.

Second, to the extent that Defendants move to exclude Theriot's "opinions" in the summary at the Background section of his Preliminary Report, Defendants' motion is also GRANTED. Theriot has not been offered as an FLSA expert, and, more importantly, he clearly identifies in a footnote that the statements are all derived from the allegations contained in the Complaint. They are not opinions at all and are not to be offered at trial.

However, the Court must also consider whether Theriot's opinions are relevant and reliable on the amount of damages/overtime wages allegedly owed the class action Plaintiffs. The Court considers reliability first. Defendants have attacked Theriot's opinions because they are based on a number of assumptions, particularly that each Plaintiff worked 70-hours weeks during the time period at issue. Defendants have previously argued that this testimony is inherently unreliable, and the Court has previously found that such testimony is a credibility determination for the trier of fact. Theriot explained the multiple sources he relied upon for his calculations, including this testimony. The Court finds that his opinions based on the identified sources is "reliable" in the sense required by Rule 702.

The Court, as it must, has also considered the relevance of Theriot's testimony and finds that his opinions will assist the trier of fact to understand or determine a fact in issue. While the calculations themselves are not difficult, Theriot expended hours analyzing various sources of

7

information spanning a large number of pages. Theriot's review and synthesis of a large volume of complex documents and information will be helpful to the trier of fact. *See Total Control, Inc. v. Danaher Corp.*, 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004) (citation and internal quotation marks omitted) (rejecting contention that financial analyst's testimony should be excluded because his damage calculations were based on simple arithmetic and explaining that "an expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding."). Even if an individual calculation appears straightforward, an expert's ability to present, in an understandable format, "a vast quantity of calculations derived from disparate sources" can assist a trier of fact. *Id.*; *see also Solstice Oil & Gas I LLC v. OBES Inc.*, 2015 WL 5059601, at *5 (E.D. La. Aug. 26, 2015) (holding that, while the expert who analyzed hundreds of disparate documents used facially inexpert methodology (addition and subtraction), his specialized knowledge of accounting would assist the trier of fact); *Sudo Properties, Inc. v. Terrebonne Par. Consol. Gov't*, 2008 WL 2623000, at *7 (E.D. La. July 2, 2008) (rejecting argument that expert's opinion was simple arithmetic and holding that the opinion was admissible because the expert's "specialized knowledge, regardless of whether his calculations involve complex methodology, will assist the trier of fact" in determining damages); *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495588, at *5 (W.D. Tex. Oct. 6, 2004) ("Given its complexity and cumbersome nature, [the expert's] compilation of this information and documentation into a presentable format is 'helpful' . . . [and] will assist the jury in extracting relevant information from the accounting documents given and will facilitate its understanding of the evidence presented.").

  Here, allowing Theriot to utilize his specialized knowledge and experience to calculate

8

figures from different sources and synthesize his results will aid the trier of fact in ascertaining Prejean's and the other class action Plaintiffs' alleged damages. *See Charalambopoulos v. Grammar*, 2017 WL 930819, at *16 (N.D. Tex. Mar. 8, 2017) ("Allowing [the expert] to sift through the evidence . . . , explain the relevant evidence to the jury in a format that it can more easily follow, and point out, based on her experience as a criminal investigator and forensic sciences consultant, why certain statements in the evidence are inconsistent with, or are not supported by, the physical evidence, will not usurp the role of the jury.").

Finally, the Court has considered whether Theriot's testimony will cause undue prejudice to Defendants and should be excluded under Federal Rule of Evidence 403. *See* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). They suggest that the sheer amount of calculated damages per Plaintiff may suggest to the trier of fact that even if an amount such as $425,000 is not due to each person, something must be due. The Court disagrees. The trier of fact may be equally likely to conclude that testimony that Plaintiffs worked 70 hours per week every week and seek such a large amount of damages is simply not credible and render a judgment accordingly. The Court is not permitted and will not engage in credibility determinations to exclude this testimony.

Defendants remain free to challenge Theriot's calculations and the bases for those calculations through "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Report and Testimony of John W. Theriot [Doc. No. 187] is GRANTED IN PART AND DENIED IN PART. To the extent that Defendants move to exclude Theriot's report, the motion is GRANTED. Theriot will testify at trial, and his report will not be received in evidence. Further to the extent that Defendants move to exclude any testimony by Theriot consistent with the summary in his preliminary report, the motion is also GRANTED. Theriot clearly states in a footnote that this information was taken from Prejean's Complaint and is not his "opinions." The motion is otherwise DENIED, and Theriot will be permitted to testify on the wage and damages calculations he performed.

MONROE, LOUISIANA this 24th day of July, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE